UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JUAN CASTILLO and RATAKIT BOONNAK,       :
                                          :
                    Plaintiffs,           :
                                          :
- against -                               :
                                          :
                                          :
TIME WARNER CABLE OF NEW YORK             :
CITY, A DIVISION OF TIME WARNER           :
ENTERTAINMENT COMPANY, L.P.,              :
                                          :
                                          :
                    Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 24, 2013_

09 Civ. 7644 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Juan Castillo and Ratakit Boonnak sued their employer, Time Warner Cable of New York City ("TWCNYC"), alleging race and national origin discrimination, retaliation and a hostile work environment under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., New York State Human Rights Law, Executive Law §§ 290, et seq. ("NYSHRL"), and New York City Human Rights Law, Admin. Code §§ 8-101, et seq. ("NYCHRL"). The case was tried to a jury in May 2012. At the conclusion of Plaintiffs' case, the Court granted TWCNYC's Fed. R. Civ. P. Rule 50(a) motion and dismissed all nine of Boonnak's claims. With respect to Castillo, the Court submitted his nine claims to the jury for its consideration. The jury returned its decision on a special verdict form. (Dkt. No. 72.) The jury found: (1) Castillo had not proved by a preponderance of the evidence that he had experienced an adverse employment action because he was Hispanic or from the Dominican Republic; (2) While Castillo had complained about discrimination in the work place, TWCNYC had not taken any retaliatory action against him because of his complaints; (3) Castillo had experienced harassment by his supervisors because he

1

was Hispanic or from the Dominican Republic, but the harassment he experienced was not so severe or pervasive that it interfered with his ability to work;[1] and (4) TWCNYC failed to prove that the harassment due to Castillo being Hispanic or from the Dominican Republic compromised no more than petty slights or trivial inconveniences.[2]  In light of these answers, the jury turned to the issue of damages.  The jury found in response to Question 6 that there was no loss of compensation.  In response to Question 7(a), the jury determined that Castillo experienced mental pain and emotional distress attributable to TWCNYC's conduct.  The jury rewarded Castillo $5,000 in damages (Question 7(b)), but found that TWCNYC did not act with malice or reckless indifference to the laws prohibiting unlawful discrimination, harassment and retaliation (Question 8).  TWCNYC prevailed on eight of Castillo's nine claims.  Castillo prevailed only on his NYCHRL hostile work environment claim, which requires a quasi-angelic work place where work is done in peace and harmony.

      Undeterred by the insignificant recovery, Castillo's attorney now seeks $292,216.25 in fees (not counting fees for time spent in preparing the application), about sixty times the size of Castillo's recovery, and $5,066.28 in costs.  Castillo also seeks pre-judgment interest on his award.  (Dkt. 103.)

## DISCUSSION

      The NYCHRL provides courts with the discretion to award the "prevailing party" costs and reasonable attorneys' fees.  N.Y. City Admin. Code § 8-502(f).  While the recovery won was very limited, there is no doubt that Castillo was a "prevailing party," and that attorney's fees

---

[1] By answering Question 4 in the negative, the jury returned a verdict in TWCNYC's favor on Castillo's Title VII and NYSHRL hostile work environment claim.

[2] By answering Question 5 in the negative, the jury returned a verdict in Castillo's favor on the New York City hostile work environment claim.

should be awarded. It should not be a windfall, but rather a reasonable fee that fairly and adequately compensates counsel relative to the results obtained. Here the issue is the reasonability of the amount of fees that Castillo claims given the very narrow, partial recovery achieved by this litigation.

**Contemporaneous Time Records**

TWCNYC argues that under federal precedent, Castillo's fee application should be denied in its entirety because Castillo did not submit contemporaneous records of the hours for which his attorneys now claim. Castillo counters that New York law controls, and embodies a more lenient approach that does not require contemporaneous records. But the absence of contemporaneous records is not fatal to Castillo's application, as TWCNYC contends. Attorney's fees may be awarded when a party submits records that are based on, or reconstructed from, contemporaneous records. Carrero v. New York City Housing Authority, 685 F. Supp. 904, 908-09 (S.D.N.Y. 1988) (rev'd on other grounds) (finding attorney affidavits containing reconstructed records adequate); see also Cruz v. Local Union No. 3 of the IBEW, 34 F.3d 1148, 1160 (2d Cir. 1994); Johnson v. Kay, 742 F. Supp. 822, 837 (S.D.N.Y. 1990) (finding sufficient the submission of "reconstructed timesheets . . . to clarify the contemporaneous timesheets"); Lenihan v. New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (permitting recovery based on typewritten transcriptions of handwritten timekeeping records).

Nuwesra, Castillo's counsel, has submitted a declaration affirming that the "fee petition submitted in this case was and continues to be based on contemporaneous records kept manually (handwritten), by the undersigned . . . ." (Nuwesra Reply Dec. ¶ 3.) Stephens' declaration also states that the hours presented in the fee petition were "derived from records contemporaneously kept by the undersigned." (Stephens Reply Dec. ¶ 13.)

This is not the case where an attorney fails to even maintain the underlying contemporaneous records.  E.g., Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). TWCNYC asserts that no records were kept at all based on following circumstantial evidence: the telephone records submitted by Nuwesra are vague, they document calls that TWCNYC asserts never occurred, Stephens' entries contain inaccuracies relating to the days he attended depositions and performed trial work, the start and stop times for certain entries ("In Person Conferences with Clients and/or Third Party Witnesses") conveniently land on the quarter hour, half hour, or hour, and Nuwesra provided date ranges rather than dates certain for one of his entries.

These alleged flaws do not compel granting TWCNYC's request.  See David v. Sullivan, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) (concluding that a limited inaccuracy in the entries and the use of date ranges for certain work did not suggest that counsel's transcriptions were not based on actual contemporaneous timesheets).  Time records should be accurate, but limited or overlooked errors do not compel the conclusion that there was a complete failure to keep any records.[3]  Further, the fact that appearances and client conferences began on the hour, half hour, or quarter hour does not strike the Court as an unusual scheduling practice, nor a cause for suspicion.  Plaintiff's proposed fee schedule lists for both Nuwesra and Stephens, the dates that they performed work, the number of hours and a description of each task.  These entries are sufficiently specific to satisfy the Court that they were based on contemporaneous records.

---

[3] Plaintiff's counsel also explained that their reference to KM/MK was shorthand for identifying Ms. Kulak, and did not indicate that Mr. Margolis personally participated in each of the calls listed.  After reviewing the telephone records, this explanation is consistent with Mr. Margolis' position that he did not become substantially involved in the case until 2012.  (Margolis Dec. ¶ 10.)  Entries pre-dating 2012 refer to KM/MK, while entries thereafter distinguish between KM and KM/MK.

**Whether the Requested Fee is Reasonable**

In calculating attorney's fees, courts should multiply the reasonable number of hours worked by a reasonable hourly rate, which generates a "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117-18 (2d Cir. 2007), amended on other grounds, 552 F.3d 182 (2d Cir. 2008). The "presumptively reasonable fee" may be reduced to account for a plaintiff's limited success. Saunders v. City of New York, 2009 WL 4729948, at *6-7 (S.D.N.Y. 2009) (citing Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 137 (2d Cir. 2008)).

A. Reasonable Hourly Rate

A "reasonable hourly rate" is what a paying client would pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n, 493 F.3d at 117-18.[4] Courts should examine market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998). "[C]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." DeCurtis

---

[4] The Court should consider case-specific factors including "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." See Arbor Hill Concerned Citizens Neighborhood Ass'n, 493 F.3d at 117-18 n.3 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)). These factors are not exhaustive.

v. Upward Bound Int'l, Inc., 2011 U.S. Dist. LEXIS 114001, at *24 (S.D.N.Y. 2011) (citation omitted).

Plaintiff seeks $350 per hour for Nuwesra.  TWCNYC does not contest this rate and so it will be allowed.  TWCNYC does object, however, to $250 per hour for Stephens, an associate at Plaintiff's law firm.

Stephens' hourly rate is adjusted to a more reasonable rate of $200 per hour.  He graduated from law school in January 2011 and was admitted to the New York State bar in September 2011.  (Stephens Dec. ¶¶ 4-5.)  Stephens started working on this case on January 23, 2012, just a year after his graduation.  (Stephens Rep. Dec. Ex. B.)  At the time of trial, Stephens had been a member of the bar for only nine months.  In these circumstances, an allowance of $200/hour is appropriate.  Torres v. City of New York, 2008 U.S. Dist. LEXIS 11027, at *5 (S.D.N.Y. 2008); see Anthony v. Franklin First Fin., Ltd., 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012).

B.  Reasonable Number of Hours

    a.  Excessive or Redundant Billing

Courts must exclude from the fee award "excessive, redundant or otherwise unnecessary hours."  Quaratino v. Tiffay & Co., 166 F.3d 422, 425 (2d Cir. 1999).  In determining whether hours were excessive, the relevant question is whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

TWCNYC proposes a 20% reduction to the fee award due to "excessive, redundant and unnecessary work."  (D. Opp. at 17-19.)  Nuwesra has voluntarily excluded three redundant hours, but otherwise contends that any reduction would be inappropriate.  (Nuwesra Rep. Dec.

Ex. 7.) Upon review, there is not a sufficient factual basis to warrant an across-the-board, percentage-based reduction in the hours for either Nuwesra or Stephens. The Court will however, specifically exclude the 14.1 hours associated with telephone calls. (Nuwesra Dec. Ex. 2, I "Telephone Call Records".) The records submitted fail to specify what work was performed; given that fact, the Court cannot determine whether such work was reasonably necessary to Castillo's success. A reduction for vague billing is appropriate. See Hensley, 461 U.S. at 433 ("Where documentation of hours is inadequate, the district court may reduce the award accordingly."); Kirsch, 148 F.3d at 172-73 (affirming district court's reduction for vague entries, including "letter to court," "staff conference," and "work on motion").

    b.  Travel Time

"[T]ravel time is appropriately compensated at half of counsel's normal billing rate." Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008); Gonzales v. Bratton, 147 F. Supp. 2d 180, 213 n.6 (S.D.N.Y. 2001). Plaintiff's attorneys claim 100% of their hourly rate for time traveling from their homes in Westchester via the Metro North to depositions, court conferences and trial, to New York City. This trip is slightly more than an hour each way. (Nuwesra Rep. Dec. ¶ 9.) Taken together, the hours add to 38 hours for Nuwesra and 19.5 hours for Stephens. (Nuwesra Dec. Ex. 2; Stephens Rep. Dec. Ex. B.)[5]

Castillo's attorneys maintain that they worked while traveling (Nuwesra Rep. Dec. ¶ 9), but fail to identify or describe the work performed, or clarify whether they already accounted for this

---

[5] Stephens does not distinguish between travel time and the time allocated to substantive work in his entries. (See Stephens Dec. Ex. A.) It appears from the docket sheet that Stephens resides near Croton Harmon and travelled for the purpose of attending the pretrial conference and trial here at the courthouse. The Court uses the estimate of 2 hours for a round trip in its calculations. The time allocated for travel on May 12 will be treated as work time, in light of the error reported in Stephens' reply declaration. (Stephens Rep. Dec. ¶ 8.) This brings the travel hour total from 20 to 18. The Court adds 1.5 hours for travel to the depositions on January 23, 2012. (Stephens Rep. Dec. ¶ 7.)

work in the schedule submitted with their application.  Absent more facts, the Court cannot credit counsel's vague assertion that their travel time was productive.  Nuwesra also contends that he voluntarily discounted subway travel to lower Manhattan and to TWCNYC's attorney's offices.  (Nuwesra Rep. Dec. ¶ 9.)  Nuwesra has not proposed a lesser-percentage reduction or otherwise explained the implications of discounted subway time on calculating travel hours.  The Court follows the customary approach of reducing fees for travel by 50%.

    C.  Adjustments to Account for Partial/Limited Success

After the court determines the "presumptively reasonable fee," an adjustment may be necessary to account for limited success.  See Robinson v. City of New York, 2009 U.S. Dist. LEXIS 89981, at *33-34 (S.D.N.Y. 2009).  Indeed, "the most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." Barfield, 537 F.3d at 152 (quoting Farrar, 506 U.S. at 114).  When evaluating the "degree of success" obtained by plaintiffs, the court should examine the "quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint."  Id.

Plaintiff's attorneys cannot recover fees for their work on Boonnak's claims.   Efforts expended on behalf of Boonnak did not contribute to Castillo's success on his hostile work environment claim.  For the most part, the two Plaintiffs alleged different incidents of harassment and derogatory comments by different individuals and supervisors, during different time periods.  See Adorno v. Port Auth. of N.Y. & N.J., 685 F. Supp. 2d 507, 517 (S.D.N.Y. 2010) (concluding that in a multi-plaintiff case where some prevailed and others did not, attorneys should not be compensated for the largely severable claims of losing plaintiffs).

Plaintiff's attorneys also cannot recover for hours prosecuting Castillo's unsuccessful claims because they were not "inextricably intertwined" with his successful NYCHRL harassment claim. See LeBlanc-Sternberg, 143 F.3d 748, 762 (2d Cir. 1998) ("When a plaintiff has . . . prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded."). Fees should not be awarded for unrelated claims based on "different facts and legal theories." Id. (quoting Hensley v. Eckerhart, 461 U.S. at 434-35). Castillo suffered no adverse employment action. Indeed he at all times remains, and is now, a TWCNYC employee. He did file complaints of harassment, but there was never retaliation; indeed, there was a bona fide investigation of Castillo's claim of harassment. With respect to hostile work environment, the jury found that it was not so severe or pervasive as to interfere with Castillo's ability to perform his job function. Rather, under the very lenient standards of the NYCHRL, the jury found that TWCNYC failed to establish that the harassment was only petty or slight and awarded damages in a de minimis award.

Castillo's degree of success was quite minimal compared to the relief sought. Both Castillo and Boonnak initially sought injunctive relief, restraining TWCNYC from making discriminatory employment decisions, Castillo's promotion to supervisor, back pay and lost benefits including overtime, compensatory damages for pain and suffering, and punitive damages. (Joint Pretrial Order Dkt. No. 66, XIII; Amended Complaint Dkt. No. 3, 19-20.) Castillo presented a total of nine possible claims to the jury: discrimination, retaliation, and hostile work environment, each arising under tri-partite statutory schemes involving federal, state and city law.

A percentage-based reduction is appropriate, inter alia, when the attorney's billing entries do not distinguish between the hours spent on compensable and non-compensable work. See Konits v. Karahalis, 409 Fed. Appx. 418, 421 (2d Cir. 2011). With minor exceptions, the attorneys' entries do not distinguish between the work completed for Castillo and Boonnak, and among Castillo's separate claims. The Court reduces the requested fee by 85% to account for Boonnak's nine dismissed claims and the unfavorable verdict on eight of Castillo's nine claims. This percentage is not a mechanical application of the ratio of success in recognition of some, albeit minimal, overlap in work in the case that would have needed to be completed to pursue the hostile work environment claim. At the same time, the percentage takes into account the overwhelming lack of success and the de minimis award.

**Costs**

TWCNYC seeks to exclude the cost of the deposition transcripts of Chris Tartarone ($1,119.70) and Robert Thomas ($372.75), and the cost of a rush copy of the pre-motion conference transcript ($452.88). (Nuwesra Dec. Ex. 3.)

"Unless otherwise ordered by the Court, the original transcript of a deposition, plus one copy, is taxable if the deposition was used or received in evidence at the trial, whether or not it was read in its entirety." Local Civil Rule 54.1(c)(2). "Costs for depositions are also taxable if they were used by the Court in ruling on a motion for summary judgment or other dispositive substantive motion." Id. "Notwithstanding this rule, the cases have established the sensible rule that the costs of depositions not used at the trial may nevertheless be taxed for costs where they 'appear to have been reasonably necessary to the litigation at the time they were taken.'" Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A., 2012 U.S. Dist. LEXIS 113923, at *26 (E.D.N.Y. 2012). Further, "[t]he plain language of the Rule's first sentence, providing that depositions are

taxable if 'used *or* received in evidence at the trial' . . . suggests that the word 'use' extends well beyond explicit reliance on the deposition as a basis for decision." Whitfield v. Scully, 241 F.3d 264, 271 (2d Cir. 2001).

In this case, the Court did not rely on Tartarone's or Thomas' depositions in its summary judgment order. Plaintiffs did not submit them or cite them in opposition to TWCNYC's motion. The Court's review has not revealed the use of these depositions during trial. Nonetheless, the Court will permit the cost of Chris Tartarone's deposition as reasonably necessary to the litigation. He was central to the complaint, as one of the foreman who allegedly contributed to Castillo's claim of a hostile work environment, and was a Defense witness at trial. "A deponent's testimony at trial 'alone is sufficient to end the inquiry as to whether their depositions were "used" at the trial.'" Natural Organics Inc. v. Nutraceutical Corp., 2009 U.S. Dist. LEXIS 71077, at *18 (S.D.N.Y. 2009). The same cannot be said of Thomas, whose deposition cost is disallowed.

"The cost of a transcript of court proceedings prior to or subsequent to trial is taxable only when authorized in advance or ordered by the court." Local Rule 54.1(c)(1). The cost is compensable only if the transcript was "necessarily obtained for use in this Court." Id. Costs associated with expediting a transcript are subject to scrutiny of the circumstances that justified the rush. Natural Organics, Inc., 2009 U.S. Dist. LEXIS 71077, at *12. Castillo has not alleged that the pretrial conference transcript was obtained for use in court and has not identified any need for expediting it. Convenience of counsel does not suffice. Id. at *11. The Court disallows the cost of the transcript.

**Pre-Judgment Interest**

Pursuant to CPLR §§ 5002 and 5004, Castillo requests pre-judgment interest at a rate of 9% on the $5000 jury award from May 16, 2012, the date of verdict, to the present date of entry of judgment. "[A]wards of prejudgment interest on emotional distress damages is not the norm for New York federal courts, and, instead, are only granted when necessary to make the plaintiff whole." DeCurtis v. Upward Bound Int'l, Inc., 2011 U.S. Dist. LEXIS 114001, at *18 n.4 (S.D.N.Y. 2011) (internal quotation and citation omitted). Castillo has failed to establish why pre-judgment interest is necessary to make him whole. Following the majority approach, the Court declines to grant pre-judgment interest.

**Stephens' Revised Fee Schedule**

Stephens' original fee schedule referred to depositions on March 12 and March 19, 2012, days for which TWCNYC claimed no depositions were scheduled. Stephens also reported assisting at trial on a Saturday, May 12, 2012. (Stephens Dec. Ex. A.) When TWYNYC pointed out the errors, Stephens submitted a revised fee schedule in reply. (Stephens Rep. Dec. Ex. B.)

An exhibit attached to the reply declaration confirms that the Chambo and Puesan depositions occurred, albeit on a different date, January 23, 2012. (Nuwesra Rep. Dec. Ex. 5.) The Court will credit the hours allocated to these depositions, which amount to 9 hours, plus 1.5 hours for travel. (Stephens Rep. Dec. ¶ 7.) Stephens also contends that while the trial references on May 12 resulted from a copy-and-paste error, he nevertheless spent the 10 hours reported on jury instructions. (Id. ¶ 8.) The Court accepts Stephens' account and will not subtract any time from the entry dated May 12, 2012.

However, there are some changes in the revised fee schedule that are unaccounted for. For example, there are an additional 7 hours of "case orientation" and "read[ing court

12

documents]" that appears on March 19, 2012.  (Stephens Rep. Dec. Ex. B.)  The previous 6 hours allocated to this entry in the original fee application appear to have been reassigned, with the 3 hours on March 12, 2012, to the January 23, 2012 deposition.  (Stephens Dec. Ex. A.)  To the extent that Stephens is claiming for additional time here, the Court disallows any unexplained amendments.  Since the total number of hours in the original application, Stephens Dec. Ex. A, already incorporates the 9 deposition hours (on March 12 and 19), the Court will not make a separate addition.  Separate travel time of 1.5 hours, however, will be added.

There are other unexplained differences.  The revised schedule reports an hour less for the entry dated May 10, 2012, and .25 less time spent "assist[ing] lead counsel at trial" and "review[ing] proceedings with lead counsel and clients" on May 11, 2012.  As with the other unexplained changes, the Court will rely on the hours reported in the original schedule.

## Final Calculations

**Lee Nuwesra**

| | |
|---|---|
| Hourly Rate: | $350/hour |
| Requested Hours: | 720.975 Hours (Nuwesra Dec. ¶ 9.) |
| Subtractions: | 14.1 Hours (Telephone Calls) <br> 38 Travel Hours x .50 = 19 Hours <br> 3 Hours for Duplicative Billing (Nuwesra Rep. Dec. Ex. 7) |
| Additions: | 33.25 hours (Drafting Reply Declaration, Nuwesra Rep. Dec. ¶ 11, Ex. 6.) |
| Total Hours: | 718.125 |
| Reduced by 85% for lack of success | 718.125 x .15 = 107.72 Recoverable Hours |
| Total: | 107.72 x $350 = $37,701.56 |

**Anthony Stephens**

| | |
|---|---|
| Hourly Rate: | $200/hour |

| | |
|---|---|
| Requested Hours: | 159.50 Hours (Stephens Dec. Ex. A) |
| Subtractions:<br>8.25 hours for travel | 8.25 hours for travel<br><br>18 travel hours (excluding May 12 entry) x 50% = 9 hour reduction.<br><br>Credit of 1.5 hours for travel to January 23, 2012 depositions x 50% = .75 hours<br><br>8.25 hours reduction |
| Additions: | 2 hours (drafting reply declaration, Stephens Rep. Dec. ¶ 10) |
| Total Hours | 153.25 |
| Reduced by 85% for lack of success | 153.25 x .15 = 22.99 recoverable hours |
| Total | 22.99 x $200 = $4597.50 |

## Conclusion

For the reasons discussed above, Plaintiff's motion for attorney's fees is GRANTED as modified. The Clerk of the Court is directed to enter judgment awarding counsel for Castillo attorney's fees in the amount of $42,299.06 (more than eight times the recovery) and costs in the amount of $4,240.65. The Clerk's judgment should also reflect the $5,000.00 awarded[6] to Castillo by the jury on May 16, 2012.

Dated: New York, New York
       April 24, 2013

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge

---

[6] See page 4 of the Verdict Form at docket # 72 on ECF.

14